UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
DR. MARTIN ROGINSKY,

                    **MEMORANDUM & ORDER**

         Plaintiff

  -against-                                Civil Action No. 09-1160
                                         (DRH)(ARL)

COUNTY OF SUFFOLK, NEW YORK and
PECONIC BAY MEDICAL CENTER,

         Defendants
-------------------------------------------------------X

**APPEARANCES:**

**Wolin & Wolin, Esqs.**
Attorneys for Plaintiff
420 Jericho Turnpike Suite 215
Jericho, New York 11753
By:    Alan E. Wolin, Esq.

**Christine Malafi, Suffolk County Attorney**
Attorneys for Defendant County of Suffolk
H. Lee Dennison Building
100 Veterans Memorial Highway
Hauppauge, New York 11722
By:    Richard H. Weinschenk, Esq., Assistant County Attorney

**Putney, Twombly, Hall & Hirson LLP**
Attorney for Defendant Peconic Bay Medical
521 Fifth Avenue
New York, New York 10175
By:    Mark A. Hernandez, Esq.
         Evan J. White, Esq.


**HURLEY, Senior District Judge:**

       Plaintiff Dr. Martin Roginsky ("Plaintiff") commenced this action alleging employment

discrimination based upon age in violation of the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 621, et seq. and the New York State Executive Law ¶ 296, et seq. Presently before the Court is the motion of defendant County of Suffolk ("Suffolk") to dismiss the complaint. For the reasons set forth below, the motion is denied.

**Background**

The following facts are taken from the complaint.

Plaintiff is a physician duly licensed to practice medicine in the State of New York and was born November 1, 1928. (Compl. ¶¶ 19-20.) In 2003, Plaintiff was hired by the County on a part-time contractual basis as a Staff Physician at the Suffolk County jail (the "Jail"). (*Id.* ¶ 23.) In or about 2004, the County and defendant Peconic Bay Medical Center ("Peconic") entered into an agreement whereby Peconic would supply physicians to the Jail, with the approval of the County. Pursuant to this agreement, Plaintiff went on the payroll of Peconic, although he continued performing his services at the Jail. (*Id.* ¶¶ 24-25.) Plaintiff "eventually became a full-time employee at the Jail, having the title of Staff Physician." (*Id.* ¶ 26.) Plaintiff's performance was excellent. (*Id.* ¶ 29.)

During his employment, it was "common knowledge" and "accepted practice" that Plaintiff wrote prescriptions for staff of the Jail, including corrections officers, nurses, physician assistants and even the warden. (Compl. ¶ 30.) In April 2008, Plaintiff wrote a prescription for a nurses' aide. The next day, Plaintiff received a telephone call from a pharmacist indicating that the aide had apparently altered the prescription to provide for a refill. Plaintiff immediately reported the activity of the aide, although the complaint does not specify to whom. (*Id.* ¶ 31.) On May 15, 2008, Plaintiff was summoned to a meeting where Dr. Gerazi, Medical Director of the Jail, and William McManus, Peconic's Administrator, were present. McManus advised

2

Plaintiff that he was asked by the County to terminate Plaintiff. No reason was given. McManus stated that Plaintiff had the option of resigning, but it had to be done that day. Not having any meaningful alternative Plaintiff resigned. (*Id.* ¶ 32.)

Several days later, the County issued a memo stating that, henceforth, prescriptions could only be issued for departing inmates. (Compl. ¶ 33.)

Plaintiff alleges that his "constructive discharge" occurred after Dr. Gerazi had made comments about Plaintiff's age such as that Plaintiff was getting "old" and that Plaintiff was not going to be around much longer. (Compl. ¶ 36.) According to Plaintiff, any attempt by defendants to use the prescription issue as justification for his discharge is nothing more than a pretext and that the "County compelled [Peconic] to take action against [P]laintiff because of his age." (*Id.* ¶ 35.)

## Discussion

### I. Motion to Dismiss Standard

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts

to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting a two-pronged approach for courts considering a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted). In

other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not 'show[n]' - - that the pleader is entitled to relief." *Id.* at 1950.

## II. Documents Properly Considered on the Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court generally may only consider facts stated in the complaint or "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007); *Gillingham v. GEICO Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (same). A document not appended to the complaint may be considered if the document is "incorporated [in the complaint] by reference" or is a document "upon which [the complaint] *solely* relies and . . . is *integral to the complaint*." *Roth,* 489 F.3d at 509 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991)) (emphasis in the original).

A district court may also "rely on matters of public record in deciding a motion to dismiss under [R]ule 12(b)(6)." *Parks v. Town of Greenburgh*, No. 07-5617, 2009 WL 2628516, at *2 (2d Cir. Aug. 27, 2009); *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)"); *see Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). Finally, in certain circumstances "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] . . . which is integral to the complaint, the defendant may produce [it] when attacking the complaint for its failure to state a claim, because plaintiff should not be allowed to escape the consequences of its own failure." *Cortec Indus.,* 949 F.2d at 47.

5

As part of its motion to dismiss, the County has submitted two documents: (1) "the contract between [the County] and [Plaintiff] titled 'Independent Medical Professional Services at County Operated Facility' dated 12/17/2002 and (2) a copy of the contract between Peconic and the County dated 9/12/06.¹ *See* Exhibits B and C to Declaration of Richard Weinschenk. For purposes of deciding the instant motion to dismiss, the Court finds that the contract between Peconic and the County is either incorporated by reference in Plaintiff's Complaint or a document upon which Plaintiff solely relied in bringing this action and is integral to the Complaint. *See, e.g., Chapman v. New York State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008) (holding "[o]ur review is limited to undisputed documents, such as a written contract attached to, or incorporated by reference in the complaint"). Accordingly, it shall be considered in connection with the instant motion.²

### III. The County's Contentions

The County proffers the following arguments in support of its motion to dismiss. Firstly, it maintains that Plaintiff's ADEA claim must be dismissed because the County was not Plaintiff's employer and because the complaint pleads, at best, a mixed motive and not the "but for" causation needed for an ADEA claim. Second, it asserts that once the Plaintiff's ADEA claim is dismissed, consideration of comity and judicial economy make it appropriate for the

---

¹ The Weinschenk Declaration misidentifies the latter agreement as one between Plaintiff and Peconic.

² As part of its reply, the County has submitted a Memorandum dated May 16, 2008 regarding "Jail Medical Unit/SCDHS: NYS Prescription Regulations - Reminder." The Court shall not consider the memorandum given that its was not submitted until the County's reply. Were it to be considered, the Court notes, parenthetically, that it supports the conclusion that the County exercised control over the methods and means of Plaintiff's work. *See* discussion *infra*.

Court to decline to exercise jurisdiction over the pendant state claim.

## IV. The Motion to Dismiss is Denied

### A. An Employment Relationship Between Plaintiff and the County is Plausible

Under the ADEA it is "unlawful for an employer," inter alia, "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age . . . ." 29 U.S.C. § 623; *see Gross v. FBL Fin. Servs.,* — U.S. —, 129 S. Ct. 2343, 2344 (2009). Consequently, the existence of an employer-relationship is an element of an ADEA claim. *Heller v. Consolidated Rail Corp.*, 331 Fed. Appx. 766, 768 (2d Cir. May 26, 2009) (Summary Order) (as ADEA applies only to discriminatory practices by an employer, complaint must allege that defendant was plaintiff's employer in order to state a claim); *see also Kentucky Retirement Sys. v. EEOC*, 554 U.S. 135, 128 S Ct. 2361, 2366 (2008) (in age-related disparate treatment case, plaintiff must prove that age actually motivated the employer's decision); *see also Okoi v. El Al Israel Airlines*, 2010 WL 1980263, *2 (2d Cir. May 12, 2010) (Summary Order).

The ADEA, like Title VII, defines an employer as "a person in an industry affecting commerce . . .," 29 U.S.C. § 630, a definition that is not particularly helpful. *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 370-71 (2d Cir. 2006). Thus, the definition of an "employer" is to be determined under the common law of agency. *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008).

In *Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), the Supreme Court set forth a non-exhaustive eleven-part test to determining whether an employment relationship exists:

> In determining whether a hired party is an employee under the

7

> general common law of agency, we consider the hiring party's right
> to control the manner and means by which the product is
> accomplished. Among the other factors relevant to this inquiry are
> the skill required; the source of the instrumentalities and tools; the
> location of the work; the duration of the relationship between the
> parties; whether the hiring party has the right to assign additional
> projects to the hired party; the extent of the hired party's discretion
> over when and how long to work; the method of payment; the hired
> party's role in hiring and paying assistants; whether the work is
> part of the regular business of the hiring party; whether the hiring
> party is in business; the provision of employee benefits; and the tax
> treatment of the hired party. . . . No one of these factors is
> determinative.

*Id.* at 751-52. These factors "should not merely be tallied but should be weighed according to their significance in the case." *Mymes v. Bonelli*, 980 F.2d 857, 861 (2d Cir. 1992). The most important factor is the first one: the manner and means. "Though no single factor is dispositive, the 'greatest emphasis' should be placed on the first factor – that is, on the extent to which the hiring party controls the 'manner and means' by which the worker completes his or her assigned tasks." *Eisenberg v. Advance Relocation & Storage, Inc.* 237 F.3d 111, 114 (2d Cir. 2000) (internal citations omitted).

The County's argument that there is no plausible claim of an employment relationship between it and the Plaintiff is grounded in the contract between the County and Peconic. According to the County that contract clearly show the intention of the parties to create and independent contractor relationship. It references those portions of the contract (1) granting Peconic the right to employ and discharge all personnel; (2) stating that Peconic is an independent contractor and neither Peconic nor any person hired by Peconic shall be considered employees of the County and (3) that although Peconic upon receiving a written request from the County must terminate the employment of any personnel employed to provide care to, inter alia,

inmates at the Jail, Peconic may continue to employ the individual for other than the care of inmates.

The County's argument that an employment relationship is precluded by the contractual language establishing an independent contractor relationship is unavailing. In *Frankel v. Bally, Inc.*, 987 F.2d 86, 91 (2d Cir. 1993) the court rejected a claim that there was no employment relationship because the contract with the plaintiff specifically labeled him an "independent contractor" stating, "the corporate form under which a plaintiff does business is not dispositive in a determination of whether an individual is an employee or an independent contractor within the meaning of the ADEA. Indeed, no per se rule applies in such circumstances."

Here, Plaintiff has alleged sufficient facts to a make plausible a claim that he was an employee of the County because the County controlled Plaintiff's " manner and means."[3] It is alleged that the County told Peconic to fire Plaintiff and it did. It is also alleged that after his constructive discharge, the County sent around a memo to the medical personnel provided by Peconic on the issue of writing prescriptions. While by no means overwhelming, these allegations are sufficient at the pleading stage to plausibly claim an employment relationship between Plaintiff and the County. *See Harrington v. Potter*, 2010 U.S. Dist. Lexis 52738, *8 (N.D.N.Y. May 28, 2010) (although the balancing of the *Reid* factors is a question of law, the determination of whether each *Reid* factor is present is a factual determination that cannot be made on a motion to dismiss because it requires review of evidence beyond the allegations in the complaint); *Bernstein v. Seeman*, 593 F. Supp. 2d 631, 634 (S.D.N.Y. 2009) (determining

---

[3] Given this conclusion, the Court need not address at this juncture Plaintiff's argument that the County is liable under a joint-employment theory.

employment status "requires the presentation of additional facts to the Court, and defendant's motion to dismiss is not the appropriate stage at which to resolve such matter"); *Banks v. Correctional Services Corp.,* 475 F. Supp.2d 189, 198 (E.D.N.Y. 2007) (argument that plaintiff was independent contractor is more appropriately made in a motion for summary judgment).[4]

### B. A Plausible ADEA Claim Has Been Alleged

Recently in *Gross v. FBL Fin. Servs., – U.S. –,* 129 S. Ct. 2343 (2009), the Supreme Court held that with respect to ADEA claims "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but for' cause of the challenged employer decision." *Id.* at 2351. In other words, the ADEA does not authorize mixed-motive age discrimination claims. *Id.* at 2350.

The County argues that the Plaintiff has not sufficiently pleaded that age was the "but for" cause of his constructive discharge. Rather, as the complaint admits that Plaintiff wrote a prescription in violation of the County's policy, then it cannot be true that Plaintiff would still have a job "but for" his age. The County's argument is unpersuasive.

The Court does not believe that under *Gross*, an ADEA plaintiff must specifically state in his pleadings that age was the "but for" reason of the alleged adverse employment action. *See Chacko v. Worldwide Flight Servs., Inc.*, 2010 WL 424025, *4 (E.D.N.Y. Feb. 3, 2010). Rather, what is required is that the complaint contain sufficient facts to make plausible the conclusion that "but for" his age Plaintiff would still be employed. Measured against this standard, the

---

[4] The County maintains that whatever control it exerted over Plaintiff's manner and means of performing his work was necessary because it has a non-delegable duty of ensuring the security at the Jail for which they need to control. While that may be true, the County does not point to any case holding that the existence of a legal obligation to control manner and means precludes the existence of an employment relationship.

instant complaint is sufficient.

According to the complaint, Plaintiff was discharged "because of his age." (Compl. ¶ 35.) As supporting facts for his claim of age discrimination, Plaintiff asserts he had previously written prescriptions for staff members without any adverse consequences despite the County's knowledge thereof. On May 15, 2008, when McManus advised Plaintiff that he was asked by the County to terminate Plaintiff, the writing of prescriptions to staff at the jail was not mentioned. Indeed, it is alleged "[n]o reason was given." (Compl. ¶ 32.) To the extent that the County maintains that its May 16, 2008 Memorandum provides the basis for the termination, the Court notes that said memorandum was issued after the fact. Indeed, the complaint asserts that the prescription issue raised "[d]ays later" "is nothing more than a pretext . . . ." (Compl. ¶¶ 33, 35.) Further support for Plaintiff's claim is found in the allegation that present at May 15 meeting was Dr. Gerazi, Medical Director of the Jail and a County employee, who is alleged to have made prior comments about Plaintiff's age such as that Plaintiff "was getting 'old' and that Plaintiff was not going to be around much longer." (Compl. ¶ 36.) In sum, the complaint contains sufficient factual allegations to state a plausible claim that "but for" his age, Plaintiff would not have been constructively discharged.

### C. Jurisdiction Over the Pendant State Claim is Appropriate

Given the denial of the County's motion to dismiss the ADEA claim, it is appropriate for the Court to exercise supplemental jurisdiction over Plaintiff's state law claim. Accordingly, the motion to dismiss the state law claim is denied.

## Conclusion

For the reasons set forth above, the County's motion to dismiss the complaint is denied.

**SO ORDERED.**

Dated: Central Islip, New York
      August 5, 2010

/s/ _____
Denis R. Hurley
Senior District Judge